FROST, Assignee, etc., Appellant, vs. CITIZENS' NATIONAL BANK OF BELOIT and another, Respondents.

*February 1 — March 1, 1887.*

CHATTEL MORTGAGES: VOLUNTARY ASSIGNMENT. *(1) Description of property in mortgage: Certainty: Delivery. (2) Fraudulent conveyance: Remedy of assignee.*

1. Where the mortgagor identifies and delivers to the mortgagee certain property as being that covered by a chattel mortgage, and the mortgagee takes full possession thereof with the consent of the mortgagor before the execution by the latter of an assignment for the benefit of his creditors, any insufficiency or want of certainty in the description of the property in the mortgage is thereby cured, both as against the mortgagor and his assignee for the benefit of creditors, the latter having only the same rights in this respect as his assignor.

2. An assignee for the benefit of creditors cannot maintain replevin for property on the ground that it was fraudulently transferred by his assignor prior to the execution of the assignment; following *Kloeckner v. Bergstrom,* 67 Wis. 197, and *Chas. Baumbach Co. v. Miller,* id. 449.

APPEAL from the Circuit Court for *Rock* County.

Replevin. The facts will sufficiently appear from the opinion.

*Wm. Ruger,* for the appellant.

*A. A. Jackson* and *B. M. Malone,* for the respondents.

ORTON, J. It appears that the firm of Hinman, Moody & Co., on the 5th day of September, 1883, executed a chattel mortgage upon the goods described in the complaint, to the respondent bank, to secure certain promissory notes therein described, and that said mortgage was duly filed in the clerk's office of the city of Beloit on the 2d day of November thereafter. The said firm thereafter, and about the 5th day of November, 1883, made a voluntary assignment for the benefit of their creditors, of all of their property, including the goods which had been so mortgaged to said bank, to the appellant. The said goods, being found in the possession of said bank, were demanded by the appellant as such assignee, and upon said bank's refusal to deliver the same the appellant brought this action of replevin to recover the possession thereof. A jury having been waived, the circuit court found all the issues in favor of the defendants, and judgment was entered accordingly, and this appeal is taken therefrom.

The two main grounds assumed and sought to be maintained by the appellant upon the trial of this action were (1) that the goods described in the complaint and taken by the writ were not those described in and conveyed by said mortgage; and (2) that if they were the same goods the said bank could not withhold the same from the appellant as such assignee, because said mortgage was void for the reason that it was made by said Hinman, Moody & Co., with intent to hinder, delay, or defraud their creditors; and these grounds, on the merits, are urged in this court to reverse the judgment.

The first ground rests upon the uncertain and insufficient description and identity of the goods mortgaged to and taken possession of by the said bank; and it is claimed by the learned counsel of the appellant that the said bank, as such mortgagee, has shown no right to said goods. The description of the goods in the mortgage is as follows:

Frost, Assignee, etc. vs. Citizens' National Bank of Beloit and another.

"2 Potter power presses; 1 Taylor power press; 1 Hoe pony press; 1 stereotype outfit, together with all its tools and supplies; 4 cases and stands, with the type and letters therein; 20 tons manilla paper; 40 tons dry goods paper; 60 tons straw paper; 60 tons rag paper; 15 tons sugar paper; 400,000 paper bags; 75,000 envelopes; 2 tons twine and cords; 2,000 lbs. writing paper; and the several lots of blank books,— said property situated and being now at their warehouse, next south of the east side Rock River Paper Co.'s mill, in the city of Beloit," etc.   Many of these articles would appear to have been sufficiently described in themselves, and all of them sufficiently identified as being in said warehouse so long as they remained in that place. But it is contended that sales were made of many of the articles, which were supplied by others manufactured or purchased, in such way that their identity has been made impossible as being the goods mortgaged.

The following findings of the circuit court are pertinent to the question of the identity of the goods: "*Second.* That at the time of making said assignment, and before it was made, the goods and chattels mentioned in the complaint herein were included in and covered by a certain chattel mortgage duly executed by said firm of Hinman, Moody & Co., on the 5th day of September, 1883, and bearing date September 5, 1883, and which was duly filed in the office of the clerk of the city of Beloit on the 2d day of November, 1883, at 3 25-60 o'clock in the afternoon of that day." "*Seventh.* That shortly prior to the time of giving the mortgage, Moses S. Hinman, the managing partner of said firm at Beloit, pointed out to *C. B. Salmon*, the cashier and one of the stockholders of the *Citizens' National Bank of Beloit*, the property intended to be covered by said mortgage, and at the request of *Salmon* furnished a memorandum of the same property thus pointed out to be included in the mortgage, and which was afterwards included in the

same." "*Eighth*. That on the 3d day of November, 1883, Moses S. Hinman pointed out to *C. B. Salmon*, the cashier of said bank, the property covered by the said mortgage, which property was afterwards, on the 5th day of November, 1883, prior to the execution and delivery of said assignment, seized and taken possession of by the agents and officers of said bank under and by virtue of said chattel mortgage; all of which property remained in the possession of said officers and agents, under said mortgage, until the same was disposed of by them under and by virtue of said mortgage in the month of December, 1883, prior to the commencement of this action; and that said Moses S. Hinman again on the 6th day of December, 1883, after the property had been seized on said mortgage as before found, pointed out the same property to the officers and agents of said bank as and for the property included in said mortgage; and that there was a schedule made and attached to said assignment, made on or about the 15th day of November, 1883, and that on the said schedule of property so attached to the assignment is this memorandum, viz.: ' All the foregoing goods and chattels enumerated in Schedule A, class 4, at Beloit, Wis., are subject to a chattel mortgage, dated September 5, '1883, executed by Hinman, Moody & Co., to the *Citizens' National Bank of Beloit, Wis.*' That this memorandum referred to the said chattel mortgage executed September 5, 1883, by the said Hinman, Moody & Co., to the *Citizens' National Bank of Beloit;* and at the time this memorandum was made the property referred to was in the possession of said mortgagee, its officers and agents, and was and is the same property to recover which, or its value, this action is brought, and was and is the same property seized under and by virtue of said mortgage." There is another finding, in effect, that said bank was the lawful owner and lawfully entitled to the possession of all and singular the said property prior to the execution and delivery

of said assignment, and was lawfully in possession of the same under and by virtue of said mortgage, and remained in the actual and continuous possession thereof until sold as aforesaid.

The testimony was amply sufficient to sustain these findings. The appellant, *Frost*, the officer, Allen, and the cashier, *Salmon*, concurred in testifying that the property was in the possession of the bank; and *Salmon* and Hinman testified that it was pointed out by Hinman as being covered by the mortgage before the execution and delivery of the assignment. The appellant, as such assignee, on the 6th day of November thereafter, served upon the officers of said bank a written demand for the bank to surrender such possession to him " of all and singular the property mentioned in a certain mortgage dated September 5, 1883, and which purports to have been executed by said Hinman, Moody & Co., to the *Citizens' National Bank of Beloit, Wis.*," preparatory to the commencement of this action. As between the parties to the mortgage, these findings, so sustained by the evidence, dispose of the question of the certainty of description and identity of the property, for their legal effect is that said firm of Hinman, Moody & Co. specially identified, turned out and delivered to the bank as the mortgagee the said property as that which was described in and conveyed by the mortgage, and that the bank took full possession thereof, by the consent of the said mortgagors, before the execution of said assignment. This cures any insufficiency or want of certainty of description of the property.

This identical question, and upon very similar evidence, was so decided by this court in *Morrow v. Reed*, 30 Wis. 81. There one of the mortgagors went with the mortgagee to the place where it was claimed the logs were situated, and *pointed out* to him those that were covered by the mortgage, and as far as practicable delivered them to him. The

present chief justice said in his opinion in that case: "If this was done as claimed, it would cure any defect in the mortgages on account of any imperfect description of the logs, or in respect to after-acquired property, . . . For it would be an appropriation of the specific logs to the mortgages and a designation of the property to which they were to attach. . . . If the mortgagee takes possession of the mortgaged property, that is sufficient. That is an identification and appropriation of the specific property to the mortgagees." See Jones, Chat. Mortg. § 60, and *Savings Bank v. Sargent*, 20 Kan. 576. If, then, there was any uncertainty of description or identity, it was cured so far as the mortgagors and assignors are concerned, and therefore, also, as to the appellant as the assignee, whose right in this respect is the same as that of the assignors. *Powers v. C. H. Hamilton Paper Co.* 60 Wis. 23; *Hawks v. Pritzlaff,* 51 Wis. 160. This disposes of the first ground of attack upon the mortgage. The appellant, as the assignee, had the right to insist in this action that the property was not embraced in the mortgage, and was not, therefore, lawfully taken or retained even as against the mortgagor and assignor.

This leaves the appellant, as such assignee, in the attitude of seeking to recover in this action the possession of the property or its value, from the bank as the mortgagee in possession under its mortgage from the assignors, on the sole ground that said mortgage is void because it was made by Hinman, Moody & Co., as the mortgagors, with the intent to hinder, delay, or defraud their creditors. It is only so far as the appellant, as such assignee, may represent the other creditors of the assignors that he can question the validity of the mortgage on that ground; and it is in their right and interest only that this action is brought or could be maintained; for the mortgagors themselves could not thus question their mortgage. *Dietrich v. Koch*, 35 Wis. 618. In view of the

present statutes on the subject,— and I need not cite them in this opinion,— this court has recently held that an assignee cannot in this action question or seek to set aside a prior mortgage of his assignor on that ground, and that his rights of action are co-extensive only with those of the creditors he represents, and he must resort to such actions or proceedings for such purpose as the creditors themselves have the right to bring irrespective of the assignment. I do not seek to construe, enlarge upon, or modify, but only to cite, these decisions, as fatal to this action. These cases were fully and carefully considered, and we see no good reason for changing the opinions therein expressed. They are *Kloeckner v. Bergstrom*, 67 Wis. 197, and *Charles Baumbach Co. v. Miller*, 67 Wis. 449. We were forced to make these decisions by the clear and unquestionable limitations of the statutes themselves. The assignee is authorized only to bring and maintain an action *to avoid* such fraudulent conveyances, etc., or to *set aside and avoid*, or *to vacate*, such conveyances, and if the assignee shall neglect for sixty days to institute proper suit *to vacate* such fraudulent or preferential conveyance, it shall be lawful for any creditor of the assignor to institute and prosecute to judgment *any such suit*. Any such suit must be a suit in equity for the affirmative relief, to set aside, avoid, or *vacate* such conveyance, or such a suit as a creditor may bring. "The assignee shall be considered as representing the rights and interests of the creditors." These are the limitations which forbid the bringing of replevin or trover, which involve the right of possession merely, which is not vested in the creditors or the assignee as against the possession of a mortgagee. It might be well for the legislature to provide that an assignee might bring and maintain an action, *legal* or equitable, for the possession or the value of any property of the assignor against any one unlawfully withholding it; but the assignee would not, in any such legal action, represent either the creditor

or the debtor, although it might ultimately be for the creditor's benefit. But as yet the legislature has not done so, and this court can only enforce the law as we find it.

So far, then, as the circuit court had cognizance of this action, we find no error in the record, and it not having had cognizance of the question whether the mortgage was given with intent to hinder, delay, or defraud creditors, we abstain from expressing any opinion upon it.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 32 N. W. Rep. 111.— REP.