[No. B193165. Second Dist., Div. One. Nov. 28, 2006.]

STEPHEN C. LEHMAN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
NANCY HOFFMEIER ZAMORA, Real Party in Interest.

112

**COUNSEL**

Rutter Hobbs & Davidoff and Frank D. Hobbs for Petitioners.

No appearance for Respondent.

The Ford Law Firm, William H. Ford III, Claudia J. Serviss and Guenther A. Richter for Real Party in Interest.

OPINION

**MALLANO, Acting P. J.**—This original proceeding raises the question of whether the statute of limitations for a liability "created by law" (Code Civ. Proc., § 359 (section 359)) applies to a claim alleging a breach of fiduciary duty by the directors of a corporation.

We conclude that section 359 governs a fiduciary duty claim where the basis of the directors' liability was first authorized by a statute or the Constitution. If the basis of liability existed at common law, it was not "created by law" within the meaning of section 359, even if the common law theory of liability has since been codified.

# I

## BACKGROUND

The first amended complaint (complaint) alleges as follows. A corporation, e4L, Inc., did business in Los Angeles County and had its principal place of business there. e4L was a direct marketing company that promoted a wide variety of products on television, radio, and the Internet. Each week, it broadcast more than 3,000 half-hour television programs, commonly known as infomercials, throughout the world. e4L's customers used credit cards to pay for purchases.

Stephen C. Lehman, Eric Weiss, and Daniel Yukelson were directors of e4L (directors). The directors controlled and dominated e4L for their own personal benefit by issuing misleading press releases announcing that e4L (1) had raised $22 million "when the money was in fact required to repay investments" and (2) had retained Donaldson, Lufkin & Jenrette as financial consultants. The directors also caused or allowed e4L to engage in improper billing procedures. They did not disclose any of these acts.

The directors caused one of e4L's subsidiaries to enter into a loan and security agreement under which the subsidiary obtained a $20 million "credit facility" in exchange for a promise to maintain a minimum net worth of $11.7 million. The directors caused or permitted the subsidiary's net worth to fall below $11.7 million. As a result, the subsidiary defaulted under the agreement.

e4L acquired a 50 percent interest in BuyItNow.com (BuyItNow), a leading Internet retailer featuring a large selection of brand name products and specialty items. The directors transferred more than $6.5 million from BuyItNow to e4L "with no invoices [or] management committee consent,"

commingled the two companies' funds, failed to hold proper board meetings, "[f]ail[ed] to obtain unanimous board consent on several corporate transactions including stock issuances," advertised products for BuyItNow "as seen on TV" when e4L could not fulfill the orders in a timely manner, caused e4L to show a $1.1 million accounts receivable from BuyItNow without providing any accounting or billing information to BuyItNow, and improperly billed BuyItNow "to manipulate e4L's EBITDA (Earnings Before Interest, Taxes, Depreciation and Amortization)." These actions diminished e4L's investment in BuyItNow, exposed e4L to substantial liability, and harmed its reputation and creditworthiness.

The directors caused or permitted e4L and its subsidiaries to inflate e4L's earnings and net worth artificially by charging customers' credit cards multiple times for a single purchase and by charging customers' credit cards for merchandise e4L did not have in stock. In so doing, the directors violated the "chargeback" limits of the credit card company.

e4L attempted to sell its Asian subsidiaries but that effort failed when the directors allowed the subsidiaries to fall significantly off their operating budgets.

Eventually, e4L lost its ability to fill and ship orders. The directors caused or permitted e4L to sell and transfer its computers to employees for nominal sums.

On or about March 5, 2001, e4L filed for chapter 11 protection under the Bankruptcy Code (11 U.S.C. § 1101 et seq.). The chapter 11 proceeding was subsequently converted to a chapter 7 case (11 U.S.C. § 701 et seq.).

The directors concealed their wrongful acts and omissions. e4L did not discover the acts and omissions until November 22, 2002.

On December 19, 2005, the chapter 7 trustee, Nancy Hoffmeier Zamora (plaintiff), filed the action below, alleging the foregoing facts and a cause of action for breach of fiduciary duty against the directors. An amended pleading was later filed. Defendants Lehman and Weiss demurred to the complaint on the ground that the action was barred by the statute of limitations, specifically section 359, which applies a three-year limitations period to an action against corporate directors based on "a liability created by law." They argued that their alleged liability was "created by law," namely, Corporations Code section 309, which sets forth a director's standard of care in performing his or her duties. Plaintiff filed opposition, arguing for application of section 343 of the Code of Civil Procedure, which states that "[a]n action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

The trial court overruled the demurrer but requested interlocutory review of whether section 359 applied to plaintiff's claim, noting that there was a split of authority on the issue. (Compare *Smith v. Superior Court* (1990) 217 Cal.App.3d 950 [266 Cal.Rptr. 253] (*Smith*) with *Briano v. Rubio* (1996) 46 Cal.App.4th 1167 [54 Cal.Rptr.2d 408] (*Briano*); see Code Civ. Proc., § 166.1 [trial court may request interlocutory resolution of controlling question of law as to which there are substantial grounds for difference of opinion].)

Lehman and Weiss filed a petition for writ of mandate with this court, arguing that section 359 applied. We issued an order to show cause, established a briefing schedule, and set the matter for oral argument. Having considered the written and oral arguments of the parties, we conclude that section 359 is not applicable because petitioners have not shown that their alleged liability was *first* authorized by a statute or the Constitution. We therefore deny the petition.

## II

## DISCUSSION

■ In reviewing the ruling on a demurrer, "we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed.' . . . When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. . . . And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58], citations omitted; accord, Code Civ. Proc., § 452.) A complaint fails to state a cause of action where the dates alleged therein establish that the claim is barred by the statute of limitations. (*Anderson v. McNally* (1957) 150 Cal.App.2d 778, 783–784 [310 P.2d 975].)

A.  *Interpretation of Section 359*

■ The petition presents a question of statutory interpretation. We follow " '[t]he fundamental rule . . . that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. . . .' . . . In determining that intent, we first examine the words of the statute itself. . . . Under the so-called 'plain meaning' rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. . . . However, the 'plain meaning' rule does not prohibit a court from determining whether the literal

meaning of a statute comports with its purpose. . . . If the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Bodell Construction Co. v. Trustees of Cal. State University* (1998) 62 Cal.App.4th 1508, 1515–1516 [73 Cal.Rptr.2d 450], citations omitted.)

Section 359 states: "This title[, which governs the time for commencing civil actions,] does not affect actions against directors, shareholders, or members of a corporation, to recover a penalty or forfeiture imposed, or to enforce a liability *created by law*; but such actions must be brought within three years after the discovery by the aggrieved party of the facts upon which the penalty or forfeiture attached, or the liability was created." (Italics added.) Our inquiry focuses on the meaning of a liability "created by law" and whether Corporations Code section 309—which requires that directors perform their duties in good faith—gives rise to such liability.

■ Two Courts of Appeal have previously addressed this issue, reaching different conclusions. In *Smith, supra*, 217 Cal.App.3d 950, the court held that section 359 applies to claims based on Corporations Code section 309. In *Briano, supra*, 46 Cal.App.4th 1167, the court expressly disagreed with *Smith*, concluding that section 359 does not apply where the basis of liability existed at common law and that Corporations Code section 309 codified the common law. As we explain, *Smith* is inconsistent with the principles announced by our Supreme Court, the Courts of Appeal, and the courts of other jurisdictions. We therefore conclude that *Briano* properly interpreted section 359 and follow *Briano*.

*Smith* and *Briano* agreed that the term "law," as used in section 359, refers to a statute or constitutional provision. (See *Smith, supra*, 217 Cal.App.3d at p. 953; *Briano, supra*, 46 Cal.App.4th at pp. 1175–1176.) They disagreed as to whether the law's *origin*—whether the liability existed at common law— makes a difference. Under *Briano*, it does. (See 3 Witkin, Cal. Procedure (2006 supp.) Actions, § 613, pp. 239–240.)

Our Supreme Court discussed these points in *Coombes v. Getz* (1933) 217 Cal. 320 [18 P.2d 939] (*Coombes*), an action predicated on a state constitutional provision (since repealed) that made a director jointly and severally liable for acts of misappropriation committed by another director or officer. (See *id.* at p. 322, citing Cal. Const., former art. XII, § 3.) The high court stated: "The term 'created by law' as used in section 359 of the Code of Civil Procedure has a somewhat restricted meaning. In one sense every liability giving rise to a cause of action may be said to be a creature of the law. . . . But in the sense in which the term is used in said code section, it is confined and restricted to a liability which exists by virtue of an express statute, and it

does not include nor extend to actions arising under the common law. . . . It does include, however, a liability arising under the Constitution." (*Coombes, supra,* 217 Cal. at pp. 333–334, citations omitted.)

*Coombes* went on to explain: "[T]he liability for misappropriations by a fellow-director[] was something which did not exist at common law, and was brought into existence by said section of the Constitution. Prior to the enactment of said section of the Constitution no such liability existed. Plaintiff's cause of action rests entirely for its validity upon the right given creditors of a corporation by this section of the Constitution. It is, therefore, . . . an action to recover on a liability created by law." (*Coombes, supra,* 217 Cal. at p. 335; accord, *Hoffman v. Wair* (D.Or. 1961) 193 F.Supp. 727, 729.)

██ Under *Coombes,* a liability "created by law" refers to liability that was *first* authorized by statute or the Constitution, not the common law. (See *Briano, supra,* 46 Cal.App.4th at pp. 1175–1176 [discussing *Coombes*]; *People v. Clauson* (1964) 231 Cal.App.2d 374, 380–381 [41 Cal.Rptr. 691] [same]; *De Malherbe v. Intern. U. of Elevator Constructors* (N.D.Cal. 1978) 449 F.Supp. 1335, 1350–1351 [same]; *Damiano v. Bunting* (1919) 40 Cal.App. 566, 567–569 [181 P. 232] [section 359 barred personal injury action against deceased stockholder because right to pursue stockholder was based on Constitution and did not exist at common law].)

Enacted in 1872, "[s]ection 359 differs from usual statutes of limitation which commence when the cause of action accrues. The history of this section is well known. It was enacted at a time when the state Constitution provided for proportional liability of shareholders (art. XII, § 3, repealed 1930). It was intended to place reasonable limits upon the time within which the direct primary liability of the shareholders could be enforced; suit could be brought by the creditor against the shareholder; and a judgment against the corporation was not a condition of suit. . . . It was strictly construed and sometimes barred a cause of action before it accrued. . . . [M]ost of the cases related to the proportional liability of shareholders, and *distinguished this from any common law liability* of shareholders." (*Hoover v. Galbraith* (1972) 7 Cal.3d 519, 525, fn. & citation omitted, italics added [102 Cal.Rptr. 733, 498 P.2d 981].)[1]

In *Pourroy v. Gardner* (1932) 122 Cal.App. 521 [10 P.2d 815], stockholders brought an action against the directors of a defunct corporation, alleging a

---

[1] Under section 359, the limitations period on "a liability created by law" (as opposed to a penalty or forfeiture) begins to run when the liability is "created," not when the cause of action "accrues" (see *Hoover v. Galbraith, supra,* 7 Cal.3d at pp. 524–525; *Richardson v. Craig* (1938) 11 Cal.2d 131, 134–135 [77 P.2d 1077]), and the time when the plaintiff actually discovers the injury or wrongful act is not dispositive (see *Briano, supra,* 46 Cal.App.4th at p. 1174).

violation of the Civil Code, which required that dividends be paid out of "surplus profits." (*Id.* at pp. 523–524.) The stockholders contended that the corporation had always operated at a loss. (*Id.* at p. 524.) The court held that the cause of action was barred by section 359, stating: "[T]he right of action against directors of a corporation conferred by . . . the Civil Code is 'a statutory right pure and simple, having no foundation in contract, nor *existence at common law.*'" (*Pourroy v. Gardner, supra,* 122 Cal.App. at p. 528, italics added.)

Section 359 may have been modeled after a New York statute with virtually identical language. (See *Coombes, supra,* 217 Cal. at p. 329.) As explained by that state's highest court, the phrase "liability created by law" "is not such as would have been used, and certainly is not such as is commonly if ever used, . . . to describe a liability *existing at common law,* independently of any statutory provision. . . . The phrase 'created by or under the laws of the state' occurs several times in the Code, and is always used in the sense of a thing *brought into existence by or under statute . . . .*" (*Brinckerhoff et al. v. Bostwick et al.* (1885) 99 N.Y. 185, 190–191 [1 N.E. 663, 665, (*Brinckerhoff*), italics added; see *id.* at pp. 191–193 [1 N.E. at pp. 666–667] [discussing legislative history of New York statute]; *Gilbert v. Ackerman* (1899) 159 N.Y. 118, 121–122 [53 N.E. 753] [" 'liability created by law,'" as used in New York statute of limitations governing actions against corporate directors, does not include liability existing at common law].) Similar statutes in other states have been given the same interpretation. (See *Gores v. Field* (1901) 109 Wis. 408, 413–414 [84 N.W. 867, 869–870] [" 'liability created by law'" refers to liability created by statute, not common law]; *Southern Bell Tel. & Tel. Co. v. Beach* (1911) 8 Ga.App. 720, 723–724 [70 S.E. 137, 138–139] [following *Brinckerhoff*].)

█ Thus, as used in section 359, "law" means statutory or constitutional law. And "created" means brought into existence by or made for the first time. (See Webster's 3d New Internat. Dict. (2002) p. 532, col. 2 [defining "create"].)

By analogy, section 338, subdivision (a) of the Code of Civil Procedure (section 338(a)) establishes a three-year limitations period for "[a]n action upon a liability *created by statute,* other than a penalty or forfeiture." (Italics added.) Courts have held that "liability created by statute" means " ' "the liability is embodied in a statutory provision *and* was of a type which did not exist at common law." ' " (*Jackson v. Cedars-Sinai Medical Center* (1990) 220 Cal.App.3d 1315, 1320 [269 Cal.Rptr. 877]; accord, *City of Los Angeles v. Belridge Oil Co.* (1954) 42 Cal.2d 823, 833 [271 P.2d 5], app. dism. (1955) 348 U.S. 907 [99 L.Ed. 711, 75 S.Ct. 292]; *Churchill v. Pac. Improvement Co.*

(1892) 96 Cal. 490, 492–493 [31 P. 560]; *Smith v. Cremins* (9th Cir. 1962) 308 F.2d 187, 189–190 & fn. 15 [applying California law]; see 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 607, p. 780.)

The phrase "liability created by statute," as used in the statutes of limitations of other states, has been interpreted in the same way, namely, the liability did not exist at common law. (See *Preferred Risk Mut. Ins. Co. v. Vargas* (1988) 157 Ariz. 17, 19 [754 P.2d 346, 348]; *McCormick v. City of Lawrence* (2005) 278 Kan. 797, 798–799 [104 P.3d 991, 992]; *Royal Ins. Co. v. Roadarmel* (2000) 2000 MT 259 [301 Mont. 508, 513, 11 P.3d 105, 108–109]; *Aetna Life & Cas Co v. Nelson* (1986) 67 N.Y.2d 169, 173–174 [501 N.Y.S.2d 313, 492 N.E.2d 386, 388]; *McAuliffe v. W. States Import Co.* (1995) 72 Ohio St.3d 534, 537–538 & fn. 3 [1995 Ohio 201, 651 N.E.2d 957, 960]; *Lincoln Bank and Trust Co. v. Neustadt* (1996) 1996 Okla.Civ.App. 10 [917 P.2d 1005, 1008]; *Shelton v. Paris* (1953) 199 Or. 365 [261 P.2d 856, 858].)

A liability is " 'created by statute' " if it "would not exist *but for* the statute." (*Shewry v. Begil* (2005) 128 Cal.App.4th 639, 644 [27 Cal.Rptr.3d 209], italics added; accord, *City of Los Angeles v. Belridge Oil Co., supra,* 42 Cal.2d at p. 833; *Winick Corp. v. General Ins. Co.* (1986) 187 Cal.App.3d 142, 145 [231 Cal.Rptr. 606].) " '[A] liability created by statute . . . ' is a liability that comes into being solely by statute and one which had no existence prior to the enactment creating it. Where liability would exist in some form irrespective of the statute, it is not '. . . a liability created by statute.' " (*Rondelli v. County of Pima* (1978) 120 Ariz. 483, 486 [586 P.2d 1295, 1298].) "Any statutory 'modification, alteration or conditioning' of a common-law cause of action which falls short of creating a previously unavailable cause of action does not transform that cause of action into 'an action . . . upon a liability created by statute.' " (*McAuliffe v. W. States Import Co., supra,* 72 Ohio St.3d at p. 538 [651 N.E.2d at p. 960]. And where a statute merely limits or expands the remedies available for a breach of duty existing at common law, the *liability* is not created by statute. (See *State v. Cortelle Corp.* (1975) 38 N.Y.2d 83, 87–88 [378 N.Y.S.2d 654, 341 N.E.2d 223, 225–226]; *State Farm Mutual Ins. Co. v. Regional Transit Service, Inc.* (1980) 79 A.D.2d 858, 859 [434 N.Y.S.2d 486, 487].)

In this action, the directors contend that their liability exists, if at all, by virtue of Corporations Code section 309, which provides:

"(a) A director shall perform the duties of a director, including duties as a member of any committee of the board upon which the director may serve, in good faith, in a manner such director believes to be in the best interests of the

corporation and its shareholders and with such care, including reasonable inquiry, as an ordinarily prudent person in a like position would use under similar circumstances.

"(b) In performing the duties of a director, a director shall be entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following: (1) One or more officers or employees of the corporation whom the director believes to be reliable and competent in the matters presented. (2) Counsel, independent accountants or other persons as to matters which the director believes to be within such person's professional or expert competence. (3) A committee of the board upon which the director does not serve, as to matters within its designated authority, which committee the director believes to merit confidence, so long as, in any such case, the director acts in good faith, after reasonable inquiry when the need therefor is indicated by the circumstances and without knowledge that would cause such reliance to be unwarranted.

"(c) A person who performs the duties of a director in accordance with subdivisions (a) and (b) shall have no liability based upon any alleged failure to discharge the person's obligations as a director. . . ."

■ We conclude that Corporations Code section 309 does not give rise to a liability "created by law." For one thing, the statute does not set forth *any* *duties* of a director, fiduciary or otherwise. Rather, it establishes a *standard of care* and accords directors *immunity from liability* if they comply with that standard. (See Legis. Com. com. (1975)—Assem. [Corrected], 23E West's Ann. Corp. Code (1990 ed.) foll. § 309, pp. 149–151; *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 506–509 & fns. 13, 14 [229 Cal.Rptr. 456, 723 P.2d 573]; see also Corp. Code, § 7231 [setting forth standard of care identical to § 309].) The statute dictates *how* a director's duties—whatever they may be—are to be performed if liability is not to attach. (See *Gaillard v. Natomas Co.* (1989) 208 Cal.App.3d 1250, 1263–1272 [256 Cal.Rptr. 702].) The duties themselves must be found elsewhere. (See 1 Marsh's Cal. Corporation Law (4th ed. 2006) §§ 10.14–10.15[A], 11.02, pp. 10-72 to 10-80, 11-12 to 11-13; Legis. Com. com. (1975)—Assem. [Corrected], 23E West's Ann. Corp. Code, *supra*, foll. § 309, p. 149, 1st par.; Corp. Code, § 300, subd. (a) [directors have duty to manage business and affairs of corporation subject to limitations approved by shareholders].)

Further, the enactment of Corporations Code section 309 did not give rise to any *new* liability. It codified common law principles, in particular the business judgment rule and the "ordinarily prudent person" standard. (See *Briano, supra,* 46 Cal.App.4th at pp. 1177–1180; *Gaillard v. Natomas Co.,*

*supra*, 208 Cal.App.3d at pp. 1264–1265; *Frances T. v. Village Green Owners Assn., supra*, 42 Cal.3d at pp. 506–509 & fns. 13, 14; Legis. Com. com. (1975)—Assem. [Corrected], 23E West's Ann. Corp. Code, *supra*, foll. § 309, pp. 149–151.) Thus, the statute did not "create" a liability within the meaning of section 359. (*Briano, supra*, 46 Cal.App.4th at p. 1175; *Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 755 [120 Cal.Rptr.2d 550]; *F.D.I.C. v. McSweeney* (9th Cir. 1992) 976 F.2d 532, 536, fn. 3.)

Consequently, we cannot say that liability for a breach of fiduciary duty would not exist "but for" Corporations Code section 309. The liability of a corporate fiduciary for wrongful acts and omissions did not come into being solely by virtue of that statute. Corporations Code section 309 was enacted in 1975. (Stats. 1975, ch. 682, § 7, pp. 1516, 1537–1538, eff. Jan. 1, 1977.) A director's fiduciary duty at common law—generally, to act with honesty, loyalty, and good faith—predated the statute by decades. (See *Jones v. H. F. Ahmanson & Co.* (1969) 1 Cal.3d 93, 106–110 [81 Cal.Rptr. 592, 460 P.2d 464] [discussing common law development of directors' fiduciary duty]; *Remillard Brick Co. v. Remillard-Dandini* (1952) 109 Cal.App.2d 405, 419–421 [241 P.2d 66] [same]; *Pacific Vinegar etc. Works v. Smith* (1904) 145 Cal. 352, 364–367 [78 P. 550] [same]; 9 Witkin, Summary of Cal. Law (10th ed. 2005) Corporations, §§ 90–100, pp. 863–876 [discussing common law fiduciary duty of corporate directors]; 1 Marsh's Cal. Corporation Law, *supra*, §§ 11.02–11.06, 11.11–11.13, pp. 11-12 to 11-60, 11-94 to 11-112 [same]; 3 Fletcher Cyclopedia of the Law of Private Corporations (2002 rev.) §§ 837.50-839, 844.10-899, 1011, pp. 161–195, 202–391, 679–685 [same]; Friedman, Cal. Practice Guide: Corporations (The Rutter Group 2006) ¶¶ 6:243 to 6:252.2, pp. 6-47 to 6-53.16 [discussing directors' fiduciary duty of care and fiduciary duty of loyalty].)

We also disagree with plaintiff's contention that courts will be faced with an overly burdensome task if they have to determine whether a particular theory of liability existed at common law. That analysis has been required under section 338(a), which governs a "liability created by statute," for more than 50 years. (See *People v. Wilson* (1966) 240 Cal.App.2d 574, 575–577 [49 Cal.Rptr. 792].) The courts have had no difficulty with it. (See 3 Witkin, Cal. Procedure, *supra*, Actions, § 607, pp. 780–783 [citing cases where § 338(a) was found to be applicable and not applicable]; 3 Witkin, Cal. Procedure (2006 supp.) Actions, § 607, pp. 235–237 [same].)

Nor has that type of analysis proved difficult or unworkable in any of the numerous other states, cited above, where it is also employed. Indeed, " '[t]he test of "a liability created by statute" is whether or not " '. . . independent of the statute, the law implies an obligation to do that which the statute requires to be done, and whether, independently of the statute, the right of action

exists for a breach of the duty or obligation . . . ." . . .' . . . This definition has been generally accepted and approved by the majority of the courts of this country.' " (*Clark v. Musick* (9th Cir. 1980) 623 F.2d 89, 92, fn. 6, quoting *Shelton v. Paris, supra,* 199 Or. at p. 367.)

For these reasons, we conclude that *Briano* properly interpreted section 359 and correctly held that section 359 did not apply to Corporations Code section 309.

B. *Application of Section 359*

In determining whether section 359 applies in this case, we engage in a three-step analysis. First, we examine the complaint to identify the cause or causes of action. Second, we decide whether any cause of action is based on a statute or the Constitution. If not, our inquiry is at an end. If so, then, in the third step, we determine whether the theory of liability existed at common law. If not, section 359 applies to that cause of action.

In bringing the demurrer, the directors had the burden of proving that section 359 barred the action. (See *Kaiser Foundation Hospitals v. Workers' Comp. Appeals Bd.* (1985) 39 Cal.3d 57, 67, fn. 8 [216 Cal.Rptr. 115, 702 P.2d 197]; *Samuels v. Mix* (1999) 22 Cal.4th 1, 10 [91 Cal.Rptr.2d 273, 989 P.2d 701].) Put another way, the directors must establish that their alleged liability on the fiduciary duty claim is based on a statute or the Constitution and did not exist at common law.

█ " ' "To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. . . . '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.' . . ." ' . . . 'What is significant for statute of limitations purposes is the primary interest invaded by defendant's wrongful conduct.' " (*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004) 115 Cal.App.4th 1145, 1153 [10 Cal.Rptr.3d 582], citations omitted.)

Here, the complaint contains a single cause of action denominated "breach of fiduciary duty." It alleges in essence that the directors mismanaged e4L to the point of bankruptcy. We have already recited the principal allegations of the complaint: In short, the directors issued misleading press releases about e4L's financial condition, engaged in improper billing procedures, overcharged customers, allowed the net worth of a subsidiary to drop below a contractual minimum, manipulated e4L's earnings through the control of other companies, advertised products e4L did not have, and allowed e4L's computers to be misappropriated by employees. (See pt. I, *ante.*)

■ In their writ petition, the directors have shown, at most, that some of plaintiff's allegations *might* give rise to liability under various statutes, *assuming* the existence of facts *not* in the complaint. That is insufficient to invoke section 359. Nor have the directors established that the liability authorized by those statutes did not exist at common law.[2] As to other allegations, the directors argue that liability did not exist at common law, but they fail to identify a statute or constitutional provision that imposes such liability. That, too, is inadequate for purposes of section 359: A statutory or constitutional basis—a "law" within the meaning of section 359—must exist.

We note that the question before the trial court and this court is whether the complaint is barred by the statute of limitations, not whether plaintiff pleaded a cognizable theory of liability. If the directors wanted to challenge the legal sufficiency of the allegations, they could have raised that issue in the demurrer. To argue now that certain of plaintiff's allegations are not actionable *at all* is not germane to the question raised in the petition.

In sum, the directors have not established at this stage of the litigation that the cause of action for breach of fiduciary duty is *not* based on a liability that existed at common law. But the allegations in the complaint may not yet be fully developed. Nothing precludes the directors from pursuing this issue in discovery or raising it again in an appropriate manner.

■ Finally, some practical observations are in order. First, courts do not exalt form over substance. (See Civ. Code, § 3528.) Thus, a plaintiff cannot avoid section 359 simply by omitting statutory references from the complaint. Second, if a plaintiff alleges several grounds for a director's liability, some of which are based on the common law and others on a statute or the Constitution, it is preferable to plead those grounds as separate causes of action. (See Cal. Rules of Court, rules 201(i), 312(g).) This will assist the trial court in determining how many causes of action are actually alleged and the bases of liability. Last, a plaintiff cannot circumvent section 359 by combining common law and statutory or constitutional theories of liability in a single cause of action. Again, substance prevails.

---

[2] The directors contend that *all* claims brought against them *on behalf of the corporation* fall within section 359, relying on *Frances T. v. Village Green Owners Assn.*, *supra*, 42 Cal.3d at pages 506–507. That case says nothing of the sort but supports our earlier statement that Corporations Code section 309 codifies common law principles. (See *Frances T.*, *supra*, at pp. 506–509 & fns. 13, 14.) In fact, derivative suits were permitted under the common law. (See *Ross v. Bernhard* (1970) 396 U.S. 531, 533–537 & fn. 7 [24 L.Ed.2d 729, 90 S.Ct. 733 735–737 & fn. 7].)

## III

## DISPOSITION

The petition is denied. The order to show cause is discharged. The parties to this proceeding are to bear their own costs.

Vogel, J., and Rothschild, J., concurred.